UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINA S.,<br><br>              Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>              Defendant. | Case No.  25-cv-05105-RFL<br><br>**ORDER REMANDING CASE**<br>Re: Dkt. No. 8 |

Plaintiff appeals from a final decision of the Commissioner of Social Security, who denied her application for disability insurance benefits.  For the reasons set forth below, the case is **REMANDED**.[1]

## I.    BACKGROUND

On September 18, 2019, Plaintiff filed an application for Title II disability insurance benefits, alleging a disability onset date of May 25, 2015.  (*See* AR 219.)  The Commissioner denied Plaintiff's claim on December 9, 2019, and request for reconsideration of that denial on May 4, 2020.  (*See* AR 73-88, 90-106.)  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") to reassess her claim.  (*See* AR 125-26.)  She appeared for an in-person hearing before an ALJ on May 26, 2022.  (*See* AR 34-72.)  The ALJ denied Plaintiff's claim on August 29, 2022.  (*See* AR 12-33.)  Plaintiff subsequently requested that the Appeals Council review the ALJ's decision, and the Appeals Council denied Plaintiff's request.  (*See* AR

---

[1] The Administrative Record is available at Dkt. No. 5.  All citations to page numbers in filings on the docket, with the exception of citations to the Administrative Record, refer to ECF page numbers.

1-6.)  She then sought judicial review in this District.  (*See* AR 2196-98.)  Upon stipulation of the parties, Judge Trina Thompson remanded the case for further administrative proceedings. (*See* AR 2202-04.)

On remand, Plaintiff appeared for a video hearing before an ALJ on February 6, 2025. (*See* AR 2159-73.)  The ALJ denied Plaintiff's claim on March 10, 2025.  (*See* AR 2125-54.)  He found that Plaintiff had the following severe impairments:  "degenerative disc disease of the cervical spine, the residual effects of a papillary thyroid carcinoma with bilateral lobectomy and post-surgical hypothyroidism, hypertension, obstructive sleep apnea, asthma, a depressive disorder, an anxiety disorder, a trauma-related disorder, and an attention-deficit disorder."  (*See* AR 2131-33.)  He also found that these impairments (both individually and in combination) do not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. Section 404, Subpart P, Appendix 1 (the "Listings").  (*See* AR 2133-36.)  He then found that Plaintiff maintains a residual functional capacity ("RFC") "to perform light work" but with certain limitations.  (*See* AR 2136-45.)  Finally, he found that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed" during the relevant period.  (*See* AR 2145-46.)  In light of these findings, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time" during the relevant period.  (*See* AR 2146.)

Plaintiff now again seeks judicial review of the ALJ's decision.  (*See* Dkt. No. 1.)  The parties have filed briefs pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. Section 405(g), and the dispute is ready for decision without oral argument.  *See* Fed. R. Civ. P. Supp. Soc. Sec. R. 5.

## II.    ISSUES FOR REVIEW

Plaintiff presents the following issues for review:

1.  Did the ALJ err in concluding that Plaintiff's impairments do not meet or medically equal the requirements of any of the Listings?

2.  Did the ALJ err in determining Plaintiff's RFC?

3.  Did the ALJ err in discounting certain medical opinions?

4.  Assuming the ALJ committed error, should the case be remanded for:  (1) further administrative proceedings; or (2) with instructions to award benefits?

## III.    STANDARD OF REVIEW

District courts are authorized to review decisions by the Commissioner to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *See Brown-Hunter*, 806 F.3d at 492 (citation omitted).  A court's limited role instead allows it to disturb an ALJ's decision only if that decision is:  (1) not supported by substantial evidence; or (2) based on the application of improper legal standards. *See id.*

**Not Supported by Substantial Evidence.**  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations," and this threshold "is not high." *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (citation omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r SSA*, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted).  A court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *See id.* (citation omitted).  But where "the evidence is susceptible to more than one rational interpretation, [a court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *See id.* (citation omitted).

**Application of Improper Legal Standards.**  Even if an ALJ commits legal error, a court will uphold the ALJ's decision if the error is harmless. *See Brown-Hunter*, 806 F.3d at 492.  But "[a] reviewing court may not make independent findings based on the evidence before the ALJ

to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *See id.* (citations omitted).

## IV.   DISCUSSION

### A.   Issue One:  The ALJ Erred in Evaluating the Listings

At Step Three of the five-step process to evaluate a claim of disability, an ALJ evaluates whether the claimant "ha[s] an impairment(s) that meets or equals one of" the Listings.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  Here, the ALJ considered whether Plaintiff met the requirements of Listings 12.04, 12.06, 12.11, and 12.15, and he found that she did not.  (*See* AR 2134.)  Plaintiff argues that the ALJ erred in finding that she did not meet the requirements of Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders).  To satisfy those requirements, Plaintiff must meet either the:  (1) Paragraph A and B criteria of those conditions; or (2) Paragraph A and C criteria of those conditions.  *See* Listings § 12.00(A)(2).  The ALJ addressed only the Paragraph B and C criteria and did not address the Paragraph A criteria.  (*See* AR 2133-36.)  This Order concludes that the ALJ erred in his evaluation of the Paragraph C criteria.[2]

#### 1.   Paragraph C

A claimant satisfies the requirements of Paragraph C if they can show a

> medically documented history of the existence of the disorder [in question] over a period of at least 2 years, and there is evidence of both:  [1] Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; *and* [2] Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*See* Listings §§ 12.04, 12.06, 12.15 (citations omitted).  The ALJ did not address whether Plaintiff had a medically documented history of the disorders in question over a period of at least two years, and the Commissioner does not dispute Plaintiff's position that she does.  (*See* Dkt.

---

[2] This Order does not address whether the ALJ erred in his evaluation of the Paragraph B criteria.

No. 8 at 7, 20.)  The record also contains medically documented histories for at least two of Plaintiff's disorders over a sufficiently long period:  (1) depression under Listing 12.04 (*see* AR 407, 846 (October 2016 and November 2019)); and (2) anxiety under Listing 12.06 (*see* AR 398, 846 (October 2017 and November 2019)).  The analysis, therefore, turns on whether the ALJ erred in concluding that Plaintiff did not meet either of the Paragraph C1 or C2 criteria with respect to these disorders.

### a.    Paragraph C1

"The criterion in C1 is satisfied when the evidence shows that [a claimant relies], on an ongoing basis, upon [1] medical treatment, [2] mental health therapy, [3] psychosocial support(s), *or* [4] a highly structured setting(s), to diminish the symptoms and signs of [their] mental disorder."  Listings § 12.00(G)(2)(b) (emphasis added) (citation omitted).  Thus, evidence of Plaintiff's reliance on any of the four C1 categories of care to diminish the symptoms and signs of her disorders will satisfy the Paragraph C1 requirement.  The ALJ focused solely on a purported lack of evidence of Plaintiff's reliance on psychosocial support and highly structured settings.  (*See* AR 2135-36.)  But the record contains evidence of Plaintiff's continual reliance on medical treatment through prescribed medication to treat her symptoms:  (1) medication for depression (*see* AR 405, 430 (February 2017 and September 2019)); and (2) medication for anxiety (*see* AR 398, 845 (October 2017 and November 2019)).  Thus, the Paragraph C1 requirement is met.

### b.    Paragraph C2

"The criterion in C2 is satisfied when the evidence shows that, despite [the claimant's] diminished symptoms and signs, [they] have achieved only marginal adjustment.  'Marginal adjustment' means that [their] adaptation to the requirements of daily life is fragile; that is, [they] have minimal capacity to adapt to changes in [their] environment or to demands that are not already part of [their] daily life."  Listings § 12.00(G)(2)(c).  The record contains ample support for Plaintiff's position that she severely struggled to adapt to changes in her environment or new demands during the relevant period:

- In a February 2017 progress note, Plaintiff's treating physician, Dr. Rudnick, recounted that Plaintiff reported that she had a "low threshold for irritibility [sic]" and that Plaintiff described an incident where she "screamed at her kids, . . . left the house for a hotel, [and] made a suicidal statement [without an] intent/plan[,] [but she] later called [her] husband and reconciled."  (*See* AR 405.)

- In a subsequent February 2017 progress note, Dr. Rudnick recounted that Plaintiff reported that, despite improvement, she continued to experience "situational anger."  (*See* AR 404.)

- In a March 2017 progress note, Dr. Rudnick recounted that Plaintiff reported that, despite improvement, she continued to experience "outbursts."  (*See* AR 403.)

- In an October 2017 progress note, Dr. Rudnick recounted that Plaintiff "cite[d] [a] tendency for reactive anxiety when unexpectedly required to multitask."  (*See* AR 398.)

- In November 2019 form, Plaintiff reported that she only leaves her home by herself if there will be "no interaction[s] with stranger[s]."  (*See* AR 305.)

- In the same form, Plaintiff reported that she does not spend time with anyone outside of her family, that she has trouble "getting along" and socializing with others because of her anxiety, and that when she does interact with others she is "always" with her husband. (*See* AR 306-07.)

- In a November 2019 progress note, Dr. Rudnick recounted that Plaintiff's husband confirmed that her ability to function and tolerate "stress/distress and ability to multitask have all worsened since identified trauma of daughter being born premature."  (*See* AR 845-46.)

- In an April 2021 progress note, a physician recounted that Plaintiff reported that she "[f]eels like she gets annoyed or irritated easily."[3]  (*See* AR 1841.)

---

[3] Plaintiff's date last insured is December 31, 2020.  (*See* AR 254; *see also* AR 2129.)  Evidence after this date is relevant to the disability analysis.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1033 n.3 (9th Cir. 2007).

- In a September 2021 progress note, Dr. Rudnick reported that Plaintiff "often [experiences] difficulty coping/communicating." (*See* AR 1668.)

- In a November 2021 progress note, Dr. Rudnick recounted that Plaintiff reported that she "[l]ash[es] out less but [is] still easily frustrated/distracted." (*See* AR 1659.)

The ALJ did not address this evidence and instead pointed to other evidence that, in his view, supported the conclusion that Plaintiff's "ability to adjust to stresses or environmental changes . . . was not minimal or marginal [] such that it would satisfy the" Paragraph C2 criteria. (*See* AR 2135-36.) First, the ALJ explained that Plaintiff traveled to Europe and Asia and on a one-month road trip and "did not decompensate" or "report to providers upon her return from travel any significant changes to mental function that she experienced while away." (*See* AR 2135 (citing AR 399, 433, 464).) This ignores evidence of Plaintiff's poor ability to function while on her trips. Though she did describe herself as enjoying the road trip and trip to Asia and said that her child "noticed that she became angry . . . without yelling" during the road trip, she also described having had an "outburst" during the road trip. (*See* AR 399, 464.) She also testified that she had panic attacks two or three times per week while in Europe because she was "always try[ing] to stay away from other people." (*See* AR 53-54 (Plaintiff's testimony during May 2022 hearing).) Also during her trip to Europe, she often wanted to stay behind and refused to go anywhere with her family. (*See* AR 66-67 (Plaintiff's husband's testimony during May 2022 hearing).) Her husband also stated in a February 2025 declaration that on trips, Plaintiff is often "not willing to participate," isolates herself and stays behind, and is otherwise just being "dragg[ed]" along. (*See* AR 2352.)

Second, the ALJ explained that Plaintiff remained "mentally stable" following her husband's 2016 surgery. (*See* AR 2135 (citing AR 407, 413).) The cited portions of the record are progress notes from April and October 2016 and do not appear to support the ALJ's position. The April note recounts that Plaintiff reported "increased stress re having more responsibility at home s/p husbadn's [sic] leg surgery last week" and a "short fuse," and otherwise observes that Plaintiff was "tearful as [she] discussed [the] overwhelming factors of situation[s] today." (*See*

AR 413.)  The October note does not discuss the surgery and recounts that Plaintiff reported a "recent conflict with husband" and that she was "tearful." (*See* AR 407.)

Third, the ALJ explained that Plaintiff bought a one-way ticket to Indonesia after a fight with her husband but decided not to go and "was able to process this in therapy." (*See* AR 2135 (citing AR 449).)  The ALJ does not explain how this incident supports the conclusion that Plaintiff could successfully adapt to changes during the relevant period.  If anything, it suggests the opposite conclusion, as Plaintiff responded to a stressful situation by almost leaving the country.

Fourth, the ALJ explained that Plaintiff did not decompensate after repeat thyroid surgeries to treat cancer, and "[b]eing faced with cancer and making treatment decisions and then being comfortable with the outcome is evidence of intact adaptive function and not a marginal ability to adjust." (*See* AR 2135-36 (citing AR 837).)  Again, however, it is not clear how this evidence demonstrates Plaintiff's ability to adapt to changes.  As Plaintiff notes in her brief, "[b]eing convinced that having had cancerous cells removed was a good idea does not indicate that [Plaintiff] is mentally stable." (Dkt. No. 8 at 22.)  Moreover, in the very same progress note cited by the ALJ, Plaintiff's treating physician observed that "[d]uring 24 hrs prior to procedure, [Plaintiff] did have panic/depression/crying" and that Plaintiff "often [has] difficulty coping/communicating and w/mental acuity, most recently in crisis surrounding acute medical condition." (*See* AR 837-38.)

Fifth, the ALJ explained that during the COVID-19 pandemic, Plaintiff was able to focus on exercises and breathing to manage her conditions. (*See* AR 2136 (citing AR 874).)  But the cited progress report merely notes that Plaintiff "[a]greed for now to focus on preventive measures" regarding her various conditions and symptoms, including "brief but daily exercise and/or breathing." (*See* AR 874.)  It says nothing about whether these practices were effective.

Thus, the ALJ both ignored relevant evidence and relied primarily on evidence that did not actually support his conclusion.  That was error.  *See Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (ALJ may not "cherry pick" evidence (citing *Scott v. Astrue*, 647 F.3d 734 (7th

Cir. 2011))).  Because the evidence demonstrates that Plaintiff severely struggled to adapt to changes in her environment or new demands during the relevant period, the Paragraph C2 requirement is met.

### 2.    Paragraph A

Because Plaintiff satisfies the Paragraph C criteria, she must be found disabled at Step Three if she also satisfies the Paragraph A criteria.  "Paragraph A of each listing (except 12.05) includes the medical criteria that must be present in [a claimant's] medical evidence."  Listing § 12.00(A)(2)(a).  The ALJ did not evaluate whether Plaintiff satisfies the Paragraph A criteria. The ALJ must do so in the first instance on remand.  *See, e.g.*, *Martinez v. Comm'r of SSA*, No. 22-cv-00504-TUC, 2023 WL 5346033, at *6-7, *9 (D. Ariz. Aug. 21, 2023) (where ALJ failed to discuss evidence or make particular findings in evaluating Paragraph C criteria, remanding for ALJ to evaluate Paragraph C criteria "in the first instance").

Plaintiff presumes that the ALJ found that she satisfies the Paragraph A criteria, "as he only considered whether the paragraph B or C criteria were met."  (*See* Dkt. No. 8 at 13.)  That is not a reasonable presumption.  The ALJ considered the Paragraph B and C criteria and concluded that Plaintiff did not satisfy either.  That conclusion dispensed with the need to consider the Paragraph A criteria, because failure to satisfy both the Paragraph B and C criteria results in a claimant failing to meet the requirements of Listings 12.04 and 12.06.

### B.    Issue Three:  The ALJ Erred in Evaluating Certain Medical Opinions

An ALJ evaluates medical evidence along five factors:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors."  *See* 20 C.F.R. §§ 404.1520c(a), (c).  The two "most important factors" are supportability and consistency, and while the regulations require an ALJ to expressly discuss these factors in their decision, they do not require an ALJ to expressly discuss the remaining factors.  *See id.* § 404.1520c(b)(2).  Supportability concerns the relevance of "the objective medical evidence and supporting explanations presented by a medical source [] to support his or her medical opinion(s)."  *See id.* § 404.1520c(c)(1).  Consistency, in turn, concerns the consistency between a

9

medical opinion and "the evidence from other medical sources and nonmedical sources." *See id.* § 404.1520c(c)(2).

Plaintiff argues that the ALJ erred in his evaluation of the opinions of Dr. Peterson, Judith Frendo, and Dr. Rudnick. In analyzing the opinion of Dr. Peterson, the ALJ focused his discussion on Dr. Peterson's opinion that Plaintiff satisfies the Paragraph C criteria. (*See* AR 2143-44.) Because Plaintiff satisfies the Paragraph C criteria as discussed above, it is not necessary to address whether the ALJ also erred in his review of Dr. Peterson's opinions. Accordingly, this Order addresses only the ALJ's evaluation of the opinions of Frendo and Dr. Rudnick.

### 1.    Frendo

Frendo is a marriage and family therapist. (*See* AR 2141.) The ALJ focused on a July 2016 report in which she conducted a "mental status examination" of Plaintiff. (*See* AR 2141-42 (citing AR 374-385).) She opined, among other things, that Plaintiff maintained either a "fair" or "poor" ability to engage in certain mental activities in light of her conditions. (*See* AR 384.) The ALJ primarily discounted Frendo's findings because she appeared to base her conclusions on Plaintiff's "own statements as opposed to [her] trained opinion." (*See* AR 2141; *see also id.* ("The remainder of Ms. Frendo's form appears to parrot [Plaintiff's] self-reporting.").) That was error.

"If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion. However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citations and quotation marks omitted). Moreover, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

In light of these standards, the ALJ erred in several respects in discrediting Frendo's

opinions.  First, the ALJ does not identify a basis for concluding that Frendo's findings were "more heavily based on [Plaintiff's] self-reports than on clinical observations."  Indeed, the report reflects that, as of the date Frendo examined Plaintiff, she had been treating Plaintiff for about 11 months, and the form expressly notes that it could "be used only when a prior evaluation and chart notes are available."  (*See* AR 382; *see also* AR 2138 (ALJ explaining that Plaintiff had been "seeing a therapist weekly" in 2016).)  Presumably, then, Frendo relied on her prior treatment of Plaintiff in preparing the report.  A review of the report also confirms that Frendo conducted a mental status examination that involved rendering clinical observations of Plaintiff's condition.  (*See* AR 378, 382-83.)  Second, the ALJ made no findings about Plaintiff's credibility, so he could not properly discount Frendo's opinion based on her reliance on Plaintiff's own statements about her condition.

Accordingly, the ALJ's decision to discount the opinions of Frendo is not supported by substantial evidence.  Instead, the relevant factors indicate that her opinions are highly persuasive.  Her opinions are supported, as they are based on her prior treatment of Plaintiff, her clinical observations, and her mental status examination.  *See, e.g.*, *Buck*, 869 F.3d at 1049 ("Dr. Kenderdine also conducted a clinical interview and a mental status evaluation.  These are objective measures and cannot be discounted as a 'self-report.'").  They are consistent with other medical opinions in the record, particularly the opinions of Dr. Rudnick (discussed below).  And they are offered by a professional who specializes in therapy.  *See* 20 C.F.R. § 404.1520c(c)(4).

### 2.    Dr. Rudnick

Dr. Rudnick is Plaintiff's treating physician.  (*See* AR 2142.)  The ALJ focused on two reports that he issued.  (*See* AR 2142-43 (citing AR 717-22, 1631-36).)  The first report is from November 2019, and there, Dr. Rudnick opined, among other things, that Plaintiff maintained either a "good" or "fair" ability to engage in certain mental activities in light of her conditions.  (*See* AR 721.)  The ALJ credited this portion of Dr. Rudnick's opinion, but he did not credit the opinion to the extent that it "assesse[d] any marked limitations."  (*See* AR 2142.)  The second report is from March 2021, and there, Dr. Rudnick opined that Plaintiff suffered from "marked"

11

or "moderate" impairments in various areas of mental functioning.  (*See* AR 1632-34.)  He also opined that her condition would require her to take 15-minute breaks every two hours, that she would likely "be absent from work as a result of [her] impairments" more than four days each month, and that "even a minimal increase in mental demands or change in the environment would be predicted to cause [Plaintiff] to decompensate."  (*See* AR 1634-35.)  The ALJ rejected these findings of marked or moderate limitations in the two opinions for various reasons, each of which is unsupported by substantial evidence.

First, the ALJ explained that the opinions "lack[ed] support from any reference to objective tests of function or to specific treatment notes."  (*See* AR 2143.)  That is insufficient here, where Dr. Rudnick had been treating Plaintiff for years by the time he issued his reports and had been routinely documenting her condition in his progress notes.  It is improper to discount his opinion for lacking express citations to those notes, and in any event, Dr. Rudnick's documentation was in the record and was consistent with his November 2019 and March 2021 reports.  (*See, e.g.*, Section IV.A.1.b, *supra* (enumerating progress notes from Dr. Rudnick).)  After all, "a physician, unlike an ALJ, is not required to provide specific citation for each opinion, particularly those supported by the record as a whole."  *Sahlberg v. Comm'r of SSA*, No. 15-cv-01815-PHX, 2017 WL 1130365, at *2 (D. Ariz. Mar. 27, 2017) (citation omitted); *see also Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) ("The primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations.  We therefore do not require that a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record.").

Second, the ALJ explained that the March 2021 report was inconsistent with Dr. Rudnick's prior observations.  He noted that in several reports from 2019 through 2022, Dr. Rudnick had noted Plaintiff's appropriate dress, cooperative attitude, good eye contact, and organized thought process, among other similar benign findings.  (*See* AR 2143.)  But "[t]he conditions of a medical appointment are not similar to those of a working environment," so it is not clear why Plaintiff's presentation in such an innocuous setting should reflect on her mental

12

functioning in a work setting.  *Jacquelyn B.T. v. Comm'r of Soc. Sec.*, No. 21-cv-01126-TLF, 2022 WL 986286, at *7 (W.D. Wash. Apr. 1, 2022); *see, e.g.*, *A.L. v. Kijakazi*, No. 20-cv-02245-VKD, 2021 WL 5771143, at *6 (N.D. Cal. Dec. 6, 2021) (accepting claimant's position that "[her] ability to maintain her personal hygiene or wear appropriate attire to a medical appointment with a familiar and trusted doctor does not translate to an ability to respond appropriately to supervisors in a work setting or to manage unexpected changes in the work setting without serious worsening of her symptoms").  The conclusions of the March 2021 report are also not inconsistent with the conclusions of the November 2019 report.  The 2019 report defines "fair" to mean "that the individual's capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described."  (*See* AR 721.) The 2021 report, in turn, defines a "moderate" limitation as one that is "moderate[,] . . . but the individual is still able to function satisfactorily (**off task 20% of the time**)," and a "marked" limitation as one that is "serious," such that there "is substantial loss in the ability to effectively function (**off task 30% or more of the time**)."  (*See* AR 1632.)  Under these definitions, a finding of "fair" functioning in 2019 is not inconsistent with findings of "moderate" or "marked" limitations in 2021.

Third, the ALJ explained that Dr. Rudnick's opinions were not consistent "with the opinions of doctors who reviewed the record."  (*See* AR 2143 (citing AR 82, 98).)  Yet later in his decision, he reached the opposite result:  "The opinions [in question] are also grossly consistent with the 2019 opinion of Dr. Rudnick if not his later opinion offered after these were issued."  (*See* AR 2144-45.)  In relevant part, these doctors opined that Plaintiff experienced a "mild to moderate" severity of symptoms, "mild/mod" limitations based on her mental status examination, a "mild/mod impaired" memory, and "mild/mod limitations" suggested by her activities of daily living.  (*See* AR 82, 98.)  The ALJ rejected any findings of moderate limitations "in interacting with others" based on Plaintiff's "episodic" irritability, "normal speech," "intermittent eye contact," and ability to travel to Europe and Asia.  (*See* AR 2145.)  As discussed above, however, the evidence demonstrates that Plaintiff severely struggled to interact

with others during the relevant period, her speech and eye contact during medical exams are of limited relevance, and her performance during her Europe and Asia trips demonstrated a poor ability to function when outside her usual environment.

Accordingly, the ALJ's decision to discount the opinions of Dr. Rudnick is not supported by substantial evidence.  Instead, the relevant factors indicate that his opinions are highly persuasive.  His opinions are supported, as Dr. Rudnick's years of progress notes demonstrate Plaintiff's severe impairments.  They are consistent with other medical opinions in the record, as acknowledged by the ALJ.  They are the product of a years-long relationship involving frequent examinations.  *See* 20 C.F.R. § 404.1520c(c)(3)(i)-(ii), (v).  And they are offered by a doctor who specializes in psychiatry.  (*See* AR 2139 (ALJ identifying Dr. Rudnick as "treating psychiatrist").)

### C. Remaining Issues

This Order does not reach Issue Two (the RFC determination) because the ALJ will need to reassess Plaintiff's RFC on remand.  In previously evaluating Plaintiff's RFC, the ALJ expressly considered his Step Three finding that Plaintiff did not meet the Paragraph C criteria. (*See* AR 2143-44.)  As discussed above, that Step Three finding was erroneous.  Accordingly, a revised evaluation on remand of Plaintiff's depression and anxiety at Step Three will necessarily implicate her RFC.  Specifically, the ALJ will have to consider the impact on Plaintiff's RFC of her severe struggles to adapt, during the relevant period, to changes in her environment or new demands.  Remand will also involve further administrative proceedings and not an immediate award of benefits (Issue Four) because further proceedings are required to determine whether Plaintiff is disabled.  *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (remand to award benefits is appropriate only where, among other things, "further administrative proceedings would serve no useful purpose").

## V. CONCLUSION

For the foregoing reasons, the case is **REMANDED**.  On remand, the Commissioner must expressly:  (1) address whether Plaintiff satisfies the Paragraph A criteria of Listings 12.04

and 12.06 at Step Three; (2) if Plaintiff is not found disabled at Step Three, explain how Plaintiff's severe struggles to adapt, during the relevant period, to changes in her environment or new demands impacted her RFC; (3) credit as highly persuasive the opinions of Frendo and Dr. Rudnick; and (4) address any other issues in the five-step process implicated by his revised findings on remand.

**IT IS SO ORDERED.**

Dated: February 3, 2026

RITA F. LIN
United States District Judge